Not for Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                        )
IN RE:                                  )    CASE NO.         02-32865 (LMW)
                                        )
  KENNETH R. BIEBEL and                 )    CHAPTER          7
  ANN M. BIEBEL,                        )
                                        )
           DEBTORS.                     )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                        )
  BARBARA H. KATZ, TRUSTEE,             )    ADV. PRO NO.     08-3115
                                        )
           PLAINTIFF                    )    DOC. I.D. NOS.   87, 112, 113, 124, 126
                                        )                     130, 131
     vs.                                )
                                        )
  JOHN C. KUCEJ,                        )
                                        )
           DEFENDANT.                   )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## APPEARANCES

Barbara H. Katz, Esq.                        Chapter 7 Trustee
57 Trumbull Street
New Haven, CT 06510

John C. Kucej, Esq.                          Defendant
95 North Main Street
Waterbury, CT 06702

## MEMORANDUM OF DECISION AND ORDER
## RE: SUMMARY JUDGMENT MATTERS AND MOTION TO DISMISS

Lorraine Murphy Weil, United States Bankruptcy Judge

In this adversary proceeding, the above-referenced plaintiff (the "Trustee") seeks an injunction against the continuance of a state court suit brought against her by the above-referenced defendant (the "Defendant"). Before the court are the following matters (the "Matters"):

- the Trustee's motion for summary judgment (A.P. Doc. I.D. No. 87, the "Summary Judgment Motion");[1]

- the Defendant's objection to the Summary Judgment Motion (A.P. Doc. I.D. No. 112, as supplemented by A.P. Doc. I.D. No. 113, the "Summary Judgment Objection");

- what is styled as the Defendant's Supplemental Motion and Affidavit in Opposition to Plaintiff's Motion for Summary Judgment (A.P. Doc. I.D. No. 124, the "Supplement");

- the Trustee's motion to strike the Supplement as untimely filed (A.P. Doc. I.D. No. 126, the "Motion To Strike");

- the Defendant's objection to the Motion To Strike (A.P. Doc. I.D. No. 130, the "Strike Objection"); and

- the Defendant's Motion To Dismiss (A.P. Doc. I.D. No. 131, the "Motion To Dismiss").[2]

---

[1] References herein to the docket of this adversary proceeding appear in the following form: "A.P. Doc. I.D. No. ___." References herein to the docket of this chapter 7 case appear in the following form: "Case Doc. I.D. No. ___."

[2] For the purposes of this ruling, the court has considered the arguments raised by the Defendant in the Supplement and in the Motion To Dismiss.

This court has jurisdiction over the Matters as core proceedings pursuant to 28 U.S.C. § 1334 and 157 (b)(2)(A)[3] and that certain Order dated September 21, 1984 of this District (Daly, C.J.).[4]

I.     **BACKGROUND**

    A.     **Chapter 7 Cases and State Court Proceedings**

In 2002, three related chapter 7 cases were filed with respect to the following debtors: (1) Enterprise Yacht Sales, Inc. ("Enterprise") (Case No. 02-33194); (2) William B. Biebel ("William") (Case No. 02-33195, "William's Case"); and (3) Kenneth R. Biebel and Ann M. Biebel (the "Biebels") (Case No. 02-32865, the "Biebels' Case").[5] The Trustee was appointed as chapter 7 trustee in all three cases. The Defendant signed each of the related bankruptcy petitions as debtor's attorney.

On June 6, 2003, the Trustee filed a motion in the Biebels' Case to approve the settlement of an alleged preference claim (the "Preference Claim") against North American Bank & Trust Company. (*See* Biebels' Case Doc. I.D. No. 32, the "Settlement Motion.") The Preference Claim was in the claimed amount of $154,392.32; the Settlement Motion proposed to settle the Preference

---

    [3]    The Defendant challenges this court's subject matter jurisdiction over this adversary proceeding in the supporting memorandum to the Strike Objection and in the Motion To Dismiss. This court has jurisdiction to determine whether the *Barton* Doctrine (as hereafter defined) applies here and such determination is a matter "concerning the administration of the estate" in this case. *See* 28 U.S.C.A. § 157(b)(2)(A) (West 2005). Accordingly, the Defendant's jurisdictional challenge cannot succeed and briefing and further argument are unnecessary.

    [4]    That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceeding arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . . ." References herein to title 11 of the United States Code or to the Bankruptcy Code are references to the same as they appeared prior to the effective date of their amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

    [5]    The Biebels are William's parents and they and William (and perhaps another son) all were involved in Enterprise. Kenneth R. Biebel died during the pendency of this chapter 7 case.

Claim for $50,000.00 for reasons articulated therein and at the hearing on the same. (*See id.*)[6] A hearing on the Settlement Motion was held on June 25, 2003. (*See* Biebels' Case Docket.) Based upon the record of that hearing and there being no objection, the court approved the proposed settlement and an order granting the Settlement Motion was signed the same day. (*See* Biebels' Case Doc. I.D. No. 37.)

On February 28, 2003, the Trustee (and the United States Trustee) filed complaints (*i.e.,* objections to discharge) in each of the Biebels' Case and William's Case seeking to deny each of them his/her chapter 7 discharge. In both cases, the Trustee's discharge objection arose from (among other things) alleged inadequacies of the disclosures in Enterprise's, the Biebels' and William's bankruptcy schedules and/or statement(s) of affairs. The Biebels (by then represented by different counsel) waived their chapter 7 discharges and that waiver was approved by this court's order dated February 13, 2006. (*See* A.P. No. 03-3034 Doc. I.D. No. 75.) The Trustee gave notice to all creditors and parties in interest of her intent to dismiss the complaint against William (also by then represented by different counsel (*i.e.,* the same counsel as the Biebels))[7] and of an opportunity for any such person to be substituted as party plaintiff in the action. (*See* A.P. No. 03-3035 Doc. I.D. No. 68.) *Cf. Jones v. Buzzeo (In re Buzzeo)*, 315 B.R. 243 (Bankr. D. Conn. 2004) (Shiff, J.) (requirement of "*Chalasani* notice"). The Trustee advised the court that the Biebels' waiver of discharge was "a factor . . . [supporting the decision to dismiss the complaint against William] but it was not the sole factor . . . ." (A.P. No. 03-3034 Doc. I.D. No. 78 at 5:13-14 (annexed as Exhibit P

---

[6] Notice of that hearing was given to the Defendant. (*See* Biebels' Case Doc. I.D. No. 36.)

[7] However, the Defendant has not formally withdrawn as counsel in either the Biebels' Case or William's Case or in the subject adversary proceedings.

to A.P. Doc. I.D. No. 124).)  The Trustee further advised the court: "I think the serious issue is . . . whether we could actually prove knowing and fraudulently, because I think under the circumstances reliance on what his family members [*i.e.,* the Biebels and his brother] told him was not unreasonable, that it would be appropriate to dismiss this complaint." (A.P. No. 03-3034 Doc. I.D. No. 78 at 3:12-17.)[8]

On June 9, 2004, the Trustee filed a motion to retain special counsel "to represent[] the estate's interest in a legal malpractice claim against . . . [the Defendant], which is property of the estate . . . . " (Case Doc. I.D. No. 43 ¶ 3.)  That motion was granted by order dated June 9, 2004. (*See* Case Doc. I.D. No. 44, the "Retention Order.")[9]  Subsequently, the Trustee commenced a civil action in Connecticut Superior Court (the "State Court") alleging (in her statutory capacity as successor to claims held by the Biebels) a claim against the Defendant for malpractice in connection with the commencement of the Biebels' Case.[10]

---

[8] It is alleged that the dismissal was conditioned (in part) on the Biebels' agreement to cooperate with the Trustee in a malpractice action against the Defendant.  The Trustee denies that allegation.  (*See* Oral Record (as hereafter defined) at 2:53:34 *et seq.*)  The Trustee acknowledges that the timing of the discharge waiver was important because the limitations period applicable to the Malpractice Action (as hereafter defined) was about to expire.  (*Id*. at 3:00:40 *et seq.*)  In any event, the events in respect of the Biebel's waiver of discharge are significant (if at all) only as evidence which may support the Defendant's claim that the Trustee "manufactured" the Malpractice Action against him.

[9] An application to employ need be served only on the United States Trustee.  *See* Fed. R. Bankr. P. 2014(a).  In accordance with this court's then extant procedures, the Office of the United States Trustee indicated to the clerk's office its non-objection to the proposed retention prior to entry of the relevant order.  The order approving the retention was served upon the Defendant. (*See* Biebels' Case Doc. I.D. No. 45.)  In any event, the Defendant does not question the validity of the Retention Order.

[10] That action (brought by the Trustee before the Biebels waived their discharges) was dismissed by the State Court as unripe.  After the discharge waiver, the Trustee brought a second, similar action (the "Malpractice Action") in the State Court.

On or about September 28, 2008, the Defendant brought a civil action (the "Defendant's Action") in State Court alleging (the "Vexatious Litigation Allegation") that the Trustee "has maintained vexatious litigation against the . . . [Defendant] to relieve her [of the] responsibility of not aggressively pursuing and obtaining the repayment of the . . . [Preference Claim instead of settling it]."  (A.P. Doc. I.D. No. 112 (Exhibit C ¶ 14).)  The same complaint also alleged (the "Statements Allegation") that the Trustee "has made statements as to the competency and honesty of the . . . [Defendant] to third parties, which has been malicious and was intended to demean the . . . [Defendant]."  (*Id.* ¶ 16.)  The complaint sought an award of damages against the Trustee personally.  (*See id.* ¶ 3.)

### B.      The Adversary Proceeding

This adversary proceeding was commenced by a verified complaint (A.P. Doc. I.D. No. 1, the "Original Trustee's Complaint") filed on October 7, 2008.  The Original Trustee's Complaint sought to temporarily and permanently enjoin the Defendant's Action (because filed without leave of this court) and any other similar action commenced by the Defendant against the Trustee without leave of this court.  The Trustee also filed a motion for a preliminary injunction.  (*See* A.P. Doc. I.D. No. 4.)  That motion was granted and a preliminary injunction was issued on December 10, 2008.  (*See* A.P. Doc. I.D. No. 15.)  On December 12, 2008, the Trustee filed an amended complaint (A.P. Doc. I.D. No. 24, the "Trustee's Complaint") updating procedural developments in the State Court.  A supplementary preliminary injunction (A.P. Doc. I.D. No. 35) was issued on December 16, 2008.  An answer to the Trustee's Complaint was filed on January 6, 2009.  (A.P. Doc. I.D. No. 41.)  That answer contained a counterclaim.  (*See id.*)  That counterclaim was withdrawn by the Defendant by

a pleading filed on January 9, 2009. (A.P. Doc. I.D. No. 42.) An amended Answer was filed on February 11, 2009. (*See* A.P. Doc. I.D. No. 73.)[11]

The Summary Judgment Motion was filed on February 17, 2009. On February 18, 2009, the court issued that certain Order Staying Discovery, Continuing Trial and Setting Schedule for Summary Judgment Matters. (*See* A.P. Doc. I.D. No. 89.)[12] The Summary Judgment Objection was filed on March 9, 2009. The Supplement was filed on April 17, 2009. The Motion To Strike was filed on April 20, 2009. A hearing (intended to be oral argument) on the Matters then of record was convened on April 21, 2009 but was continued (the "Continued Hearing") to April 29, 2009 for

---

[11] Notwithstanding a contrary allegation in that pleading, the Trustee continues to serve as trustee in this case. The Trustee filed a motion to strike the Defendant's amended answer. (*See* A.P. Doc. I.D. No. 77.) A hearing on that motion (and certain other matters) was continued without date on March 4, 2009. In light of the disposition ordered below, those matters are moot.

[12] That order (deemed by the court to be "necessary and appropriate for efficiency, judicial economy and preservation of this court's (and the parties') legal resources") provided in relevant part that:

> [A]ll discovery in this adversary proceeding is stayed pending further order of this court; and . . .
>
> [A]ll discovery and pre-trial matters now pending before this court are hereby continued without date (except with respect to the . . . [Summary Judgment] Motion), subject to further order of the court; and . . .
>
> [T]he trial in this proceeding scheduled for March 9, 2009 is continued without date, subject to further order of the court; and . . .
>
> [O]n or before March 11, 2009, the . . . [Defendant] shall respond to the . . . [Summary Judgment] Motion . . . ; and
>
> [F]urther proceedings on Doc. I.D. Nos. 49 and 75 hereby are continued without date, subject to further order of the court . . . .

(A.P. Doc. I.D. No. 89 at 1-2.) At an on-the-record status conference held on March 6, 2009, the court clarified that it would order additional discovery if the Summary Judgment Motion could not be disposed of without discovery.

- 7 -

notice reasons.[13] The Defendant filed the Strike Objection on the day before the Continued Hearing and the Motion To Dismiss the day of that hearing. Both of those matters were placed on the calendar for the Continued Hearing. The Continued Hearing was convened as scheduled. Both parties (each *pro se*) appeared and were heard.[14] The Matters now are ripe for the disposition ordered below.

## II.    SUMMARY JUDGMENT

"Summary judgment is appropriate only if the pleadings and submissions . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *The Andy Warhol Foundation for Visual Arts, Inc. v. Hayes (In re Hayes),* 183 F.3d 162, 166 (2d Cir. 1999). *See also* Fed. R. Civ. P. 56(c) (made applicable here by Fed. R. Bankr. P. 7056). The movant bears the burden of establishing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case."). The court must view all ambiguities and draw all reasonable inferences in the light most favorable to the nonmovant. *See Novak v. Blonder (In re Blonder)*, 246 B.R. 147, 150 (Bankr. D. Conn. 2000) (Krechevsky, J.). Ultimately, the role of the court is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

---

[13]    References to the oral record of the Continued Hearing appear here in the following form: "Oral Record at _____."

[14]    There are other developments in this proceeding (including appellate developments) that are not discussed herein because the court does not deem them to be relevant.

### III.     "*BARTON* DOCTRINE"

The Trustee argues that the Defendant's Action must be enjoined because, under *Barton v. Barbour,* 104 U.S. 126 (1881) and its progeny, the Defendant was required to seek permission of this court prior to bringing suit against the Trustee in the State Court. The so-called "*Barton* Doctrine" has been articulated as follows:

> [A litigant] . . . must obtain leave of the bankruptcy court before initiating an action in district court when that action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity. *See Springer v. Infinity Group Co.,* No. 98-5182, 189 F.3d 478 (10th Cir. Aug. 26, 1999) (unpublished table decision), *cert. denied,* 529 U.S. 1020, 120 S.Ct. 1422, 146 L.Ed.2d 314 (2000); *Gordon v. Nick,* No. 96-1858, 162 F.3d 1155 (4th Cir. Sept. 2, 1998) (unpublished table decision); *In re Linton,* 136 F.3d 544, 546 (7th Cir. 1998); *Lebovits v. Scheffel (In re Lehal Realty Assocs.),* 101 F.3d 272 (2d Cir. 1996); *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir. 1993); *Vass v. Conron Bros. Co.,* 59 F.2d 969, 970 (2d Cir. 1932); *Kashani v. Fulton (In re Kashani),* 190 B.R. 875, 885 (9th Cir. BAP 1995).
>
> "An unbroken line of cases . . . has imposed [this] requirement as a matter of federal common law." *Linton,* 136 F.3d at 545. In so holding, these circuit courts have applied the rule referred to as the "*Barton* doctrine." *See id.* The Supreme Court in *Barton v. Barbour,* 104 U.S. 126, 127, 26 L.Ed. 672 (1881), stated that "[i]t is a general rule that before suit is brought against a receiver[,] leave of the court by which he was appointed must be obtained." *Barton* involved a receiver in state court, but the circuit courts have extended the *Barton* doctrine to lawsuits against a bankruptcy trustee. In *Linton,* the Seventh Circuit explained the reasons behind its application of the *Barton* doctrine to a bankruptcy trustee, as follows: "The trustee in bankruptcy is a statutory successor to the equity receiver, and . . . [j]ust like an equity receiver, a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code." 136 F.3d at 545.
>
> In addition, the policy behind this leave of court requirement was well-stated by the Seventh Circuit:
>
>> If [the trustee] is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded . . . . Without the requirement [of leave], trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums, and this will

> make the administration of the bankruptcy laws more expensive . . . .
> Furthermore, requiring that leave to sue be sought enables bankruptcy
> judges to monitor the work of the trustees more effectively.
>
> *Linton,* 136 F.3d at 545.

*Carter v. Rodgers (In re Carter),* 220 F.3d 1249, 1252-53 (11th Cir. 2000), *cert. denied,* 531 U.S. 1077 (2001) (alterations in original; footnote omitted).  *See also Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 971 (9th Cir. 2005) ("The requirement of uniform application of bankruptcy law dictates that all legal proceedings that affect the administration of the bankruptcy estate be brought either in bankruptcy court or with leave of the bankruptcy court.").

To obtain leave of court to sue a trustee, the requesting party must establish a *prima facie* case on the merits against the trustee.  *See Strand v. Loveridge,* No. 2:07-CV-00576-DAK, 2008 WL 893004, at *2 (D. Utah Mar. 28, 2008); *In re Eerie World Entertainment, L.L.C.,* No. 00-13708 (ALG), 2006 WL 1288578, at *3 (Bankr. S.D.N.Y. Apr. 28, 2006).  However, "even if the party seeking leave has established a *prima facie* case against the trustee, the bankruptcy court may still conclude that it is in a better position to adjudicate the claim based on a 'balancing of the interests of all parties involved.'" *Strand, supra* at *2 (citation omitted).  Failure to seek leave of court before instituting a suit against the trustee in a nonappointing court cannot be rectified after commencement of that suit because there was lack of subject matter jurisdiction in the nonappointing court at the time suit was brought.  *See In re Kids Creek Partners, L.P.*, 248 B.R. 554, 558-59 (Bankr. N.D. Ill.), *aff'd,* 2000 WL 1761020 (N.D. Ill. Nov. 30, 2000).  *See also Kashani,* 190 B.R. 875, 884 ("Courts have long held that the nonappointing court may not entertain suits against the trustee for acts done in the trustee's official capacity without leave from the appointing court because the other court lacks subject matter jurisdiction.").

There are two exceptions to the *Barton* Doctrine. The first is statutory. Section 959(a) of title 28 of the United States Code provides as follows: "Trustees, receivers or managers of any property . . . may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property . . . ." 28 U.S.C.A. § 959(a) (West 2005).[15]

The second exception to the *Barton* Doctrine is inherent in the *Barton* Doctrine itself:

> It is well settled that leave of the . . . [bankruptcy] forum must be obtained by any party wishing to institute an action in a . . . [state] forum against a trustee, *for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court.*

*DeLorean Motor Co.*, 991 F.2d 1236, 1240 (emphasis added).[16] Thus, the trustee is not protected by the *Barton* Doctrine in cases where the trustee should have obtained a court order and did not. *See Leonard v. Vrooman,* 383 F.2d 556, 560 (9th Cir. 1967), *cert. denied*, 390 U.S. 925 (1968) (holding that "a trustee wrongfully possessing property which is not an asset of the estate may be sued for damages arising out of his illegal occupation in a state court without leave of his appointing court"). *But see Muratore v. Darr*, 375 F.3d 140, 147 (1st Cir. 2004) (declining to recognize "some generalized tort exception to the Barton doctrine"). Moreover, the trustee is not protected by the *Barton* Doctrine if the trustee obtains a court order but acts beyond its scope. *See Teton Millwork Sales v. Schlossberg,* No. 07-8091, 2009 WL 323141 (10th Cir. Feb. 10, 2009) (finding that receiver who was authorized by court order to seize the defendant's property held in the name of Teton Millwork Sales, an entity in which the defendant held a 25% interest, could be sued without leave of his appointing court when he seized 100% of the assets of Teton Millwork Sales). *Cf. Lurie v.*

---

[15] The Defendant does not argue that the statutory exception applies.

[16] The Defendant claims that that second exception is applicable here.

*Blackwell,* 211 F.3d 1274, 2000 WL 237966 (9th Cir. Feb. 18, 2000) (unpublished table decision).[17]

Facts sufficient to support the allegation that the trustee exceeded the scope of the apparent authorizing order must be pled by the plaintiff at the outset or the *Barton* Doctrine will bar the suit in the nonappointing court. *Lowenbraun v. Canary (In re Lowenbraun),* 453 F.3d 314 (6th Cir. 2006).

> [It is] presume[d that] acts were a part of the trustee's duties unless Plaintiff *initially alleges at the outset facts demonstrating otherwise.* This presumption strikes us as persuasive. Congress intended for the Bankruptcy Code to be comprehensive and for the federal courts to have exclusive jurisdiction over bankruptcy matters. A presumption in favor of the trustee . . . that [he was] acting within the scope of . . . [his] duties prevents a plaintiff . . . from making unsupported allegations in an attempt to defeat Congress's goal of providing exclusive federal jurisdiction over bankruptcy matters.

*Id.* at 322 (second alteration in original; emphasis added; citations omitted).

## IV.    **APPLICATION OF LAW TO FACT**

The Retention Order provided (in relevant part): "Barbara H. Katz, as Trustee of the estate of Kenneth R. Biebel and Ann M. Biebel is authorized to employ Ivan M. Katz, Esq. [the Trustee's spouse], as special counsel for the purpose stated in the Trustee's application to pursue a legal malpractice claim . . . . " (Biebels' Case Doc. I.D. No. 44 at 1.) Accordingly, the Retention Order on its face authorized the Trustee to commence and prosecute the Malpractice Action. The

---

[17]    Lurie's reliance on *Leonard [v. Vrooman]* is misplaced. There, the trustee in bankruptcy, by "forcible entry" and without court order, took possession of real property belonging to a third party. It was clear that the trustee had no authority to act as he did . . . . In that circumstance, the third party was permitted to pursue his action in state court against the trustee without obtaining prior approval of the bankruptcy court. Here, by contrast, Blackwell acted lawfully, pursuant to a writ of execution issued by the state court in Montana, and within his authority as liquidating trustee.

*Id.* at *2 (citation omitted).

Defendant does not dispute that. (*See* Oral Record at 2:34:14 *et seq.*) However, the Defendant argues that the Retention Order authorized the Trustee to bring a colorable claim against him, not a "manufactured" claim against him. Accordingly, the question is: May the Defendant sue the Trustee in another court without the permission of this court for conduct which facially complied with the Retention Order? For the reasons discussed below, the court concludes that the answer to that question is "no."

The Trustee could have raised the *Barton* Doctrine defensively in the Defendant's Action as a challenge to subject matter jurisdiction. *Cf. Muratore,* 375 F.3d 140 (action brought against trustee in district court dismissed for lack of subject matter jurisdiction pursuant to the *Barton* Doctrine). If the State Court were required to go behind the Trustee's facial compliance with the Retention Order in order to determine its own jurisdiction, the State Court would be required to undertake an inquiry into proceedings before this court (including proceedings in respect of the Retention Order). Such a rule would undermine this court's exclusive jurisdiction over this case. That exclusive jurisdiction would be better served if the State Court would be required to determine its subject matter jurisdiction (or lack thereof) solely by determining whether the Trustee facially complied with the Retention Order. *Cf. Teton Millwork Sales, supra* (receiver's conduct was undisputed and facially exceeded the scope of the order). The rule in this court should be consistent. Accordingly, the court concludes that the Vexatious Litigation Allegation (even as liberally construed) is, as a matter of law, insufficient to meet the *Lowenbraun* standard.[18] Therefore, the

---

[18] However, that allegation might (if proven) be relevant for purposes of determining whether the Trustee could rely upon the Retention Order to support a claim of quasi-judicial immunity in a suit against her in this court. *Cf. Kowalski-Schmidt v. Forsch (In re Giordano),* 212 B.R. 617, 622-23 (B.A.P. 9th Cir. 1997), *aff'd in part, rev'd in part on other grounds,* 202 F.3d 277, 1999 WL 1054726 (9th Cir. 1999) (unpublished table decision) (finding that trustee's disclosure to the court in obtaining the relevant order must have been in good faith). The *Barton* Doctrine is

presumption stands unrebutted that the Trustee was undertaking "acts done in the trustee's official capacity and within the trustee's authority as an officer of the court" (solely for *Barton* Doctrine purposes) when she commenced and prosecuted the Malpractice Action.[19] Since prior leave of this court was not sought prior to instituting the Defendant's Action, such action must be permanently enjoined.[20] *Cf. Lehal Realty Assocs.*, 101 F.3d 272 (affirming district court order which enjoined chapter 11 debtor's general partner's state court action against the trustee for breach of fiduciary duty where action violated the *Barton* doctrine).

The foregoing analysis determines *where* the Trustee may be sued (*i.e.,* in this court only), not *whether* she may be sued. The court is aware that the Defendant may raise some matters concerning the Trustee's case administration defensively in the Malpractice Action (*e.g.,* on the issue of damages and/or causation). However, there is a significant difference between raising case administration matters defensively in the State Court and seeking to impose personal liability on the Trustee in the State Court. With certain exceptions (discussed above), sound public policy supports limiting actions to impose personal liability on a trustee to the appointing court. *See, e.g., Carter,* 220 F.3d at 1252-53 (*Barton* Doctrine is necessary because "otherwise trusteeship will become a

---

jurisdictional. Quasi-judicial immunity is substantive. They are not the same thing. The quasi-judicial immunity issue is not now before the court in these jurisdictional proceedings.

[19]    If the Statements Allegation were asserted alone (rather than together with the Vexatious Litigation Allegation), the court would perform a separate *Barton* analysis with respect to the Statements Allegation. However, the Statements Allegation was made in tandem with the Vexatious Litigation Allegation. Moreover, based on the record of these proceedings, it is apparent that the gravamen of the Defendant's Action is the Vexatious Litigation Allegation and the Statements Allegation is but a minor component of the Defendant's Action. Accordingly, the analysis above is sufficient to justify the injunction of the entire Defendant's Action.

[20]    Even if the Defendant had sought this court's prior approval and even if the Defendant had made out the requisite *prima facie* case, this court would have exercised its discretion to retain its exclusive jurisdiction to examine the Trustee's case administration. *Cf. Strand, supra*; *Eerie World Entertainment, supra.*

more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees." (*quoting Linton,* 136 F.3d at 545)).

## V. CONCLUSION

For the reasons discussed above: (a) the Summary Judgment Motion (A.P. Doc. I.D. No. 87) is granted; (b) the Summary Judgment Objection (A.P. Doc. I.D. Nos. 112 and 113) and the Supplement (A.P. Doc. I.D. No. 124) are overruled; (c) the Motion To Strike (A.P. Doc. I.D. No. 126) is denied and the Strike Objection (A.P. Doc. I.D. No. 130) is overruled (both as moot); (d) the Motion To Dismiss is denied (A.P. Doc. I.D. No. 131); and (e) a separate permanent injunction will issue. A further hearing is scheduled for June 17, 2009 at 10:00 a.m. to consider the issue of monetary sanctions against the Defendant.[21] It is **SO ORDERED.**

Dated: May 19, 2009                                    BY THE COURT

                                                      Lorraine Murphy Weil
                                                      United States Bankruptcy Judge

---

[21] Consideration of that issue was deferred to the final hearing at the December 15, 2008 hearing. (*See* A.P. Docket entry for December 15, 2008.)